JOHN AUGSBURY, RESPONDENT, *v.* CHARLES CROSSMAN, APPELLANT.

*Bankruptcy act of 1867 — when State insolvent law suspended by — Petition for discharge under State law — relinquishment by petitioning judgment creditor, of the security for his debt — form of.*

The bankruptcy act of March 2, 1867, did not take effect so as to suspend the operation of the insolvent law of this State until June 1, 1867.

A petition, for the discharge of a debtor under the State insolvent law, was signed by a judgment creditor, who indorsed thereon: "For value received I hereby release to the assignee to be appointed, all claims on the estate of Charles Crossman, that I have by reason of the judgment against him assigned to me." *Held,* that this was a sufficient compliance with the provision of 2 Revised Statutes, 36, section 11, requiring any secured creditor, who signs the application, to add to his signature a declaration in writing relinquishing his security for the benefit of all the creditors of the debtor.

APPEAL from a judgment in favor of defendant entered on a verdict rendered by direction of the court, and also from an order denying a motion for a new trial on the minutes.

The action was brought against the defendants, as copartners under the firm name of Crossman, Reynolds & Co., on a promissory note made in the firm name. The defendant Crossman, alone, was served with the summons and complaint. He answered, denying the copartnership and the making of the note by the firm; and setting up a discharge from his debts, under the insolvent law of the State of New York. (2 R. S., 16, *et seq.*) The plaintiff replied, alleging, among other things, that the discharge was void, because the State law, by virtue of which it was granted, was not in force, but had been suspended by the act of congress in relation to bankruptcies, passed in 1867. The bankrupt act was approved on the second day of March. By its fiftieth section it provided as follows : "This act shall commence and take effect as to the appointment of officers created hereby, and the promulgation of rules and general orders, from and after the date of its approval, provided that no petition or other proceeding under this act shall be filed, received or commenced, before the 1st day of June, A. D. 1867." The insolvent's petition was presented to Mr. Justice MULLIN, on the 27th day of February, 1867 ; on the same day, an order was made by him, requiring the creditors to show cause against a discharge on the 25th of May, 1867, and directing the mode of its service and publication, and on the day specified in the order, the petitioner executed an assignment of all his property, pursuant to the provisions of the act, and the discharge was granted. At the trial, the court directed a verdict for the plaintiff, for the amount of the note.

*L. H. Brown*, for the appellant. The court erred in holding that the fiftieth section of the bankrupt law, approved March 2, 1867, superseded the State insolvent law so as to invalidate the discharge granted under it May 25th, 1867, as it declares in the opinion it did hold. So long as both statutes can stand together a repeal or suspension by implication will not be held intended. (55 N. Y., 616, 617 and case cited; *Davies* v. *Fairburn*, 3 How. [U. S.], 636–644.) As a general rule, a statute will not be so construed as to allow it to have a retrospective effect beyond or before

the time of its commencement or becoming operative. (5 Hill, 354, 355, and cases cited; *Maines* v. *Davis*, 32 Barb., 468; *Jarvis* v. *Jarvis*, 3 Edw. Ch., 462.) Congress could not, by direct or indirect declaration, effect a repeal or suspension; nor in any manner, except by an exercise of its power in establishing an operative active system of bankruptcy. This was not accomplished till June 1st, 1867. (3 Bank. Reg., 110; *Reed* v. *Taylor*, 7 American R. [32 Iowa, 209], 180; *Day* v. *Bardwell*, 97 Mass., 246; S. C., 3 Bank. Reg., 115; *Meekin et al.* v. *Their Creditors*, 19 La. An., 497; 3 Bank. Reg., 511; *Martin* v. *Berry*, 37 Cal., 208; *Matter of Reynolds*, 5 Am. R. [8 R. I., 485], 615; *Griswold* v. *Pratt*, 9 Metc. Pr., 16; *Betts* v. *Bagley*, 12 Pick., 570, 579; *Maltbie* v. *Hotchkiss*, 38 Conn., 80; S. C., 5 Bank. Reg., 485, 487; *In re Reynolds*, 9 id., 50; *Van Nostrand* v. *Carr*, 30 Md., 128; S. C., 2 Bank. Reg., 485; Bump's L. & P. of Bankruptcy [8th ed.], 293, 295, and cases cited.) Under the bankrupt law of 1841 the following are in point: 9 Rhode Island, 218; 2 Iredell (N. C.), 463. The following were cases where proceedings under the State laws had been commenced as above: *Judd* v. *Ives* (4 Metc., 401); 97 Massachusetts, 252; 51 New Hampshire, 336; 37 California, 208. See, also, *Chamberlain* v. *Perkins* (51 N. H., 336); *Barber* v. *Rodgers* (71 Pa. St., 362); 100 Massachusetts, 287; *In re Winternitz* (18 Pitts. L. J., 61); *Commonwealth* v. *O'Hara* (3 Pitts., 70); 10 Bankrupt Register, 236. Several of the cases hold that proceedings commenced before the bankrupt law took effect, under State law are not affected by that law. (19 La. An., 497; 5 Rob. [La.], 27; 8 id., 123.)

*Lansing & Sherman*, for the respondent. The bankrupt act approved March 2, 1867, suspended the operation of the insolvent laws of the State from the time the act went into force. (*Sturges* v. *Crowninshield*, 4 Wheaton, 122; *Ogden* v. *Saunders*, 12 id., 213; *Griswold* v. *Pratt*, 9 Metc., 16.) The bankrupt act was passed or approved by the president, on the 2d day of March, 1867, and became operative on that day as a law for every purpose, except that by the proviso in the fiftieth section, no petition or other proceeding under the act could be filed or commenced until the 1st day of June, 1867. Unless some other time is specified in the act itself, an act of congress takes effect from the time it is approved

by the president. (Potter's Dwarris on Statutes, 100; U. S. Const., art. 1, sec. 7; *Matthew* v. *Zanes*, 7 Wheaton, 164; *Walter* v. *Richardson*, 2 Story C. C., 571.) The language used by congress in the different sections of the act shows conclusively that the intention of congress was that the act should take effect immediately on its passage. (*Traders' Bank* v. *Campbell*, 14 Wall., 87; N. Y. Superior Court, *Shears* v. *Lolhinger*, 10 Abb. R. [N. S.], 287; U. S. District Court, Ohio, *Perry* v. *Langley*, 7 Am. Law Reg., [N. S.], 429–435; *Corner* v. *Mallory*, 31 Md., 468; 1 U. S. Dig. [N. S.], 111; 1 National Bank. Reg., 98; 7 Blatch., 262–274; Bump on Bankruptcy [5th ed.], 520–522; 6 National Bank. Reg., 43; id., 169–260.)

SMITH, J.:

The only branch of this case which need be considered is that pertaining to the insolvent discharge. The principal question is whether the bankrupt act of 2d of March, 1867, took effect on the day it was approved, so far as to suspend the insolvent law of the State and invalidate all proceedings under it had after that date, or whether its operation in that respect was postponed by the proviso in the fiftieth section, to the 1st day of June, 1867.

The argument on the part of the respondent is, that it being the well-known rule that a statute takes effect from the time of its passage, unless some other time is specified in the act itself, the presumption of law is, that it does so take effect, and the burden is on the defendant in this case to show, by the provisions of the act, that such was not the intention of congress; that the only intent of the proviso, in the fiftieth section, was to delay the commencement of proceedings under the act till the first of June, in order to give time to the court to make rules and appoint officers, and thus provide the machinery without which no proceedings could be had; that the act contains several provisions which show that the act was intended to take effect from the time of its passage, as, for instance, the language in the twenty-ninth section: "if, since the *passage of this act*, he has destroyed, mutilated," etc.; and again, in the same section, "if, being a merchant or tradesman, he has not, subsequently to the *passage of this act*, kept proper books of account;" and in the thirty-ninth section, "that any person residing and owing debts as

aforesaid, who, after the *passage of this act,* shall depart," etc., and in section 44, "that from and after the *passage of this act,* if any debtor," etc. ; and finally, that the construction contended for by the respondent's counsel, has been given to the proviso by the Supreme Court of the United States, in the case of *Traders' Bank* v. *Campbell* (14 Wall., 87).

The answer to the argument of the respondent's counsel is, that the burden resting on the appellant is limited to showing that congress did not intend to invalidate *bona fide* proceedings had under State insolvent laws, prior to the time fixed for the commencement of proceedings under the bankrupt act; that the absence of such intention is not disproved by the prohibition of acts on the part of debtors in fraud of the provisions of the bankrupt act, intermediate the date of its passage and the time fixed for the commencement of proceedings under it; and that all that is decided in *Traders' Bank* v. *Campbell* (*supra*), is that the provisions of the act designed to prevent frauds upon it on the part of debtors and others, took effect at the time of its passage, notwithstanding the proviso in the fiftieth section. That the decision went no farther, appears from the report of the case. It was an appeal from a decree of the Circuit Court for the northern district of Illinois, in which that court held that a judgment in a State court against the bankrupt taken by confession when both parties knew of his insolvency, though taken before the 1st day of June, 1867, was an unlawful preference under the thirty-fifth section of the bankrupt act, it being taken after the enactment of that law. On the argument before the Supreme Court, the counsel for the appellants took the position, preliminarily, that under the proviso in the fiftieth section, the bill below did not lie, because all the acts complained of took place before the first of June, 1867, prior to which day the proviso declares that no petition or proceeding shall be begun. Mr. Justice MILLER, who delivered the opinion of the court, disposed of the objection in a few words, holding that any act done after the approval of the statute, in fraud of its provisions, was within its prohibitions.

Let us see, then, what is the true construction of the proviso, upon the point in question. The power of congress, on the subject of bankruptcies, is not exclusive of the States. When it is unexecuted by congress, the States are at liberty to exercise the power in its full

extent, unless so far as they are controlled by other constitutional provisions; yet, when congress has acted upon the subject, the power of the States is limited and controlled to the extent of the national legislation. (*Sturges* v. *Crowninshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 273.) But the bankrupt act does not affect cases under the insolvent law of a State, pending at the time of its going into force. (*Judd* v. *Ives*, 4 Metc., 401; *Taylor* v. *Carryl*, 20 How. [U. S.], 583, and cases there cited; *Appleton* v. *Bowles*, 2 N. Y. S. C. [T. & C.], 569.) In view of these general principles, it seems evident that by the proviso deferring the commencement of proceedings under the act till the first of June, congress intended that up to that time the insolvent laws of the State should continue in full operation, the same as if the act had not been passed. The only alternative is to conclude that congress intended to prevent access either to the State or federal courts, in cases of insolvency or bankruptcy, from and after the date of the passage of the act, till the time fixed for the commencement of proceedings under it. That intention should not be imputed to the legislature, except upon the clearest language. Indeed it may well be questioned, whether an act intended to have that effect would not transcend the constitutional power of congress. A law prohibiting access to both the federal and the State courts, for the purpose of obtaining an equitable disposition of the estates of bankrupt and insolvent persons, would be a clear perversion and abuse of the power to pass uniform laws on the subject of bankruptcies.

The construction of the proviso in question has been the subject of adjudication in the courts of some of the other States, and in some of the district courts of the United States. A few months after the bankruptcy act went into operation, the Supreme Court of Massachusetts held, in *Day* v. *Bardwell and others* (97 Mass., 246), that the act did not suspend the insolvent laws of that State, until the 1st day of June, 1867. GRAY, J., delivered the opinion of the court, and discussed the question very thoroughly. In March, 1868, LEAVITT, J., sitting in the United States District Court, Ohio, decided the question the other way, in *Perry* v. *Langley* (7 Am. Law Reg., 429). There, a debtor made an assignment under the insolvent law of Ohio, on the 25th of May, 1867, and under it a State court took cognizance of the matter. On July seventeenth, a

petition in bankruptcy was filed by a creditor. The court held that, as to that matter, the bankrupt act was in force on May twenty-fifth, and the United States court could rightfully take jurisdiction of the whole matter under the petition filed in July. The views of the court were stated in a carefully prepared opinion, which seems to have omitted no argument that could be advanced in support of the decision, and in which the judge intimates that the ruling is contrary to his first impression. He does not refer to the case of *Day* v. *Bardwell*, and probably his attention was not called to it. In April, 1869, the same question came before the Supreme Court of California, in the case of *Martin* v. *Berry* (37 Cal., 208). SANDERSON, J., in delivering the opinion of the court, reviewed at length the opinion of LEAVITT, J., in *Perry* v. *Langley* (*supra*), and dissented from its reasoning and conclusions. His examination of the question is exhaustive, and to my mind is convincing. In accordance with it, the court held that the insolvent law of California was not suspended by the bankrupt act till the first day of June. In December, 1871, the Supreme Court of New Hampshire decided the question the same way, in *Chamberlain* v. *Perkins* (51 N. H., 336). The opinion cites and follows *Day* v. *Bardwell*, and disapproves of *Perry* v. *Langley*. The only case in this State to which I have been referred, is *Shears* v. *Solhinger* (10 Abb. [N. S.], 287), cited by the respondent's counsel. It throws no light upon the question. For aught that appears the insolvent proceedings, referred to in that case, were commenced after the 1st of June, 1867. All that is said in the report, on that point, is that they were commenced "since the bankrupt act went into operation." I entertain the opinion, very confidently, that the insolvent law of this State was not suspended until the 1st day of June, 1867, and that the discharge, granted on the twenty-fifth of May, was not invalidated by the provisions of the bankrupt act.

The respondent's counsel also insists that the discharge was void, under the State law, by reason of certain jurisdictional defects.

It is said that the petition was not signed by creditors representing two-thirds of the debts of the insolvent. The statute requires that the petition shall be signed by the insolvent debtor and "by so many of his creditors residing within the United States, as have debts in good faith owing to them by such debtor, then due or thereafter to

become due, and amounting to at least two-thirds of all the debts owing by him to creditors residing within the United States." (2 R. S., 16, § 2.) It also provides that "whenever a petitioning creditor shall have * * * any mortgage, judgment, or other security, for securing the payment of any sum of money, upon any real or personal estate of the debtor, * * * he shall not become a petitioner in respect to the debt so secured, unless he shall add to his signature to the petition a declaration in writing that he relinquishes to the assignees * * * every such * * * security, for the benefit of all the creditors of such debtor; which declaration shall operate as an assignment of such * * * security to the assignees, * * * and vest in them all the rights and interest of such petitioning creditor therein." (Id., 36, § 11.) The whole amount of debts appearing by the inventory in evidence in this case is $10,118.74; two-thirds of which is $6,745.82. The debts owing to the petitioning creditors amount to $8,726.43. Of those, debts to the amount of $3,436.51 were secured by judgment, to wit: Bagley, $108.50; Leepy, $741.63; Ross, $850; Clark, $1,736. Each of those judgment creditors added to his signature to the petition a declaration purporting to be a relinquishment of his judgment, but the respondent's counsel claims that such declaration is insufficient in each case. That claim presents the only question involved in the point now under consideration. The declarations attached to the signatures of Bagley, Leepy and Ross, respectively, are substantially alike. That of Bagley is in these words: "For value received, I hereby release to the assignee, to be appointed, all claims on the estate of Charles Crossman, that I have by reason of the judgment against him assigned to me." It is true, this does not follow the words of the statute, but the statute does not prescribe the form. It is a substantial compliance. A release of all claims on the estate of the judgment debtor, by reason of the judgment against him, amounts to a relinquishment of the judgment; and a release to the assignee, is necessarily a release to him for the benefit of all the creditors of the debtor, as it is the duty of the assignee to appropriate to their benefit all the rights and property of the debtor thus released to him. The debts owing to Bagley, Leepy and Ross, and secured by judgment, therefore go to make up the two-thirds. The declaration, signed by Clark, seems to be imperfect. There was, evidently, an

omission to fill a blank left in drawing it, so that it makes no reference to the judgment held by him. But there are two-thirds without counting his judgment debt.

I have examined all the other objections taken to the sufficiency of the papers, and the jurisdiction of the judge, and think them devoid of merit. This is so apparent that it is hardly necessary to state them, or the reasons for so holding.

As the discharge is regarded as valid, it follows that the judgment should be reversed and a new trial had, costs to abide event.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment reversed and new trial ordered, costs to abide the event.