## LOWELL v. INTERNATIONAL TRUST CO.

(Circuit Court of Appeals, First Circuit. December 17, 1907.)

No. 732.

1. BANKRUPTCY—RIGHTS OF TRUSTEE—ENFORCEMENT OF TRUST AGREEMENT.
     A trustee in bankruptcy has no interest which he can enforce for the benefit of general creditors in an arrangement between the bankrupt and certain creditors by which money deposited with one, which was a bank, was to be held in trust and distributed pro rata between them, and which was not prohibited by the bankruptcy statute.

2. SAME—VOIDABLE PREFERENCE.
     The fact that accounts assigned by a bankrupt to a creditor as collateral security more than four months prior to the bankruptcy were collected within the four months period does not entitle the trustee to recover such collections as preferences.

3. SAME—BANKS—RIGHT OF SET-OFF—"PREFERENTIAL TRANSFER."
     New York Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, applied.
     [Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

In Error to the District Court of the United States for the District of Massachusetts.

James A. Lowell and John Lowell, for plaintiff in error.
William M. Richardson (Robert M. Morse, on the brief), for defendant in error.

Before COLT, PUTNAM, and LOWELL, Circuit Judges.

PUTNAM, Circuit Judge. This writ of error originated in an action brought by the trustee in bankruptcy of the Thomas & Pike Coal Company against the International Trust Company, seeking to recover amounts received by the International Trust Company from the bankrupt within four months prior to the filing of the petition in bankruptcy, and the receipts of which were alleged to be of a preferen-

tial character. The plaintiff's declaration contained two counts, each of which is based on section 60 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], as amended by that of Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1907, p. 1031]. The District Court ordered a verdict for the defendant, and the trustee thereupon sued out this writ of error.

Portions of the propositions submitted to us by the trustee allege that the bankrupt had been insolvent for a considerable time, and that during that period it had been struggling along with its business with some support from its creditors, and with an understanding between the International Trust Company and some other creditors by virtue of which all of them, including the International Trust Company, should receive certain pro rata benefits out of whatever funds might come from the Thomas & Pike Coal Company. Therefore, it is claimed that the funds now sued for are held by the International Trust Company in a quasi trust, enforceable by the trustee. Aside from the fact that this action is based on the statute, it is, on principles of the common law, whether strictly legal or equitable, too plain to need discussion that a trustee in bankruptcy has no interest in an arrangement of the character described which he can enforce.

One of the counts of the declaration is based on the receipt by the International Trust Company, within four months of the filing of the petition in bankruptcy, of funds coming from certain accounts which had been assigned to it before that period commenced. It is difficult to perceive on what ground this claim rests, because the substantial rights of the parties were fixed at the time the assignment was made, and the collections were only incidents thereof.

The other count involves a more serious matter. The transactions all occurred within the preferential period, and are described in the plaintiff's offer of proof on the strength of which the District Court directed a verdict for the defendant, as follows:

"The coal company sold all its coal, horses, and other property to the Suffolk Coal Company, and on April 27th it deposited in the trust company where it kept its bank account a check from the Suffolk Coal Company of $41,824.25. There was before that on that day the balance of about $1,000 in the trust company. The coal company drew a check for $40,185.14 in favor of Townsend. This check was presented to the trust company, but refused. Subsequently, on the same day, the trust company charged up the two demand loans of $17,000 and $2,500 on which no demand had been made, and paid itself the sum of $18,056.24, which was the amount of the two loans with interest, less a credit of $1,527.94 for coal furnished.

"At all times since February 1st the coal company had been insolvent and the trust company had known it, and the trust company had received much more than its proportionate share of any payments made by the coal company; and even if the check to Townsend had been paid, he still would not have received as large a proportion of his debt as the trust company had up to that time received. The trust company had notice from the coal company before it made the appropriation of the money to pay its own loans that the coal company intended to apply substantially the whole of the deposit to Townsend.

"The trust company applied the deposit thereafter without notice to the coal company or to Townsend on the demand notes which it held on which no demand had been made. Immediately after this the trust company reported the transaction to the coal company, which took no action to disapprove it, and treated the deposit account as diminished to that extent."

· With reference to this offer of proof two minor observations are to be made. First, by the law in Massachusetts, and probably throughout all the New England States, so-called "demand notes" are payable and suable without any actual demand being made. Second, a considerable portion of this proof has more or less relation to the propositions which we have said the plaintiff submitted, namely, that there was a quasi trust binding the International Trust Company, as to which we make no further observation than we have already made.

Undoubtedly the District Court, in ordering a verdict for the defendant, felt compelled thereto by New York Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. We are unable to perceive how we can substantially distinguish the two cases.

The plaintiff calls to our attention Traders' Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832; but that was distinguished in New York Bank v. Massey, at page 146 of 192 U. S., at page 201 of 24 Sup. Ct. (48 L. Ed. 380), as follows:

"In Traders' Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832, the right of set-off was not relied upon, but a deposit was seized on a judgment which was a preference."

Turning to Bank v. Campbell, 14 Wall., pages 89 and 97, 20 L. Ed. 832, make this clear. The creditor there had obtained an execution against the debtor before he became bankrupt. After it took out its execution, certain collections made by it from drafts placed by the bankrupt in its hands in the ordinary course of business were turned over to the sheriff, and levied on under the same execution under which other property involved in the same litigation had been levied on. In other words, the bank clearly did not rely at all on its relations to the bankrupt as its customer, but it put itself entirely on its rights as an execution creditor, which rights, as the law then stood, were under the circumstances ineffectual.

The plaintiff also urges on us that, in New York Bank v. Massey, the bank took no action formally or otherwise, but merely left it to the law to offset the deposit made by the bankrupt against his indebtedness, while in the case at bar we must accept the statement that the defendant charged up its demand loans against the deposit, or, in other words, went through the formalities of certain alleged journal entries. This, however, was ineffectual either way, whether to benefit or prejudice the International Trust Company. It only gave expression to what the law itself would accomplish, that is, it cleaned up the set-off and left it where the law itself would have left it. At law, it takes two parties to accomplish an effectual payment, both a payor and a payee. Sometimes, of course, the law appropriates moneys in payment, or permits the creditor to do it; but that is in consequence of some express or implied understanding between the parties. In such instances an intention on the part of both parties to make payment on some indebtedness underlies what the law accomplishes, and the law is called in only because, while payment is intended, the particular item of indebtedness to which it shall be appropriated is not specifically pointed out. In no sense, however, is a deposit like the deposit here payment, or intended as payment. This is the first condition of the

decision in New York Bank v. Massey, and a vital one; because, if a deposit in the usual course of business may be in the nature of a payment, an unlawful preference would necessarily be involved under the circumstances of either New York Bank v. Massey or the case at bar, a suggestion of a possibility which the Supreme Court was compelled to negative.

What the International Trust Company did in the case at bar more than what was done in New York Bank v. Massey was, as we have said, simply to give form to what the law itself accomplished in substance. Moreover, if what was done by the International Trust Company in distinction from what was done by the creditor in New York Bank v. Massey, accomplished a preference, and for that reason was invalid or has been invalidated, the condition prior to the charging up the demand loans would have been restored by force of law, and the deposit would remain with the International Trust Company, precisely as it did in the case before the Supreme Court, and also the law would be left to operate in precisely the same manner. All this, therefore, raises no substantial difference which we can discover to relieve us from the conclusions of the Supreme Court in the case on which the International Trust Company relies.

In addition to the above, we refer to the decision of the Circuit Court of Appeals in the Seventh Circuit in Re George M. Hill Co., 130 Fed. 315, 64 C. C. A. 561, 66 L. R. A. 68. This case was decided only a few months after New York Bank v. Massey, and at page 318 of 130 Fed., at page 564 of 64 C. C. A. (66 L. R. A. 68), it was rested thereon. In that case it appears, at page 317 of 130 Fed., at page 563 of 64 C. C. A. (66 L. R. A. 68), that two days before the filing of the petition in bankruptcy the creditor bank appropriated the balance of the deposit account precisely as was done in the case before us. No distinction was made by the Circuit Court of Appeals on that account. It is true that the attention of the court does not seem to have been specifically called thereto; but the facts indicate that none of the parties to that litigation perceived any distinction on account thereof.

The judgment of the District Court is affirmed, and the appellee recovers its costs of appeal.