STUDLEY v. BOYLSTON NAT. BANK OF BOSTON.

(Circuit Court of Appeals, First Circuit.   November 21, 1912.)

No. 991.

BANKRUPTCY (§ 166*)—PREFERENCES—PAYMENT TO BANK.

   The bankrupt was a customary borrower and depositor at defendant bank, where it kept a deposit account and where it had been in the habit of paying discounts at maturity by checking against the deposit account. On September 12, 20, and 30, and on October 3, and 14, 1910, payments were made out of the deposit account to settle maturing discounts, all within four months before proceedings in bankruptcy had commenced. *Held*, applying Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380, and Lowell v. Trust Company, 158 Fed. 781, 86 C. C. A. 137, that, such payments having been made in good faith, and no deposits having been made after insolvency to enable the bank to secure a preference, the payments did not constitute a preference.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250-258; Dec. Dig. § 166.*]

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Action by H. J. Butler Studley, as trustee of the Collver Tours Company, against the Boylston National Bank of Boston, to recover alleged preferences. From a decree dismissing a petition, the trustee appeals. Affirmed.

J. Butler Studley, of Boston, Mass. (Stewart C. Woodworth and Brandeis, Dunbar & Nutter, all of Boston, Mass., on the brief), for appellant.

Hollis R. Bailey, of Boston, Mass. (George F. Piper, of Boston, Mass., on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge.   The proponent of this proceeding is the trustee in bankruptcy of the Collver Tours Company. The respondent is a bank of deposit, where the bankrupt kept an ordinary bank account, borrowing money from it, and keeping deposits there, from 1907 to the time the bankruptcy petition was filed on December 16, 1910. Borrowings and deposits ran along in the customary way, with nothing occurring out of the common course, unless as herein stated. The trustee, claiming that what occurred constituted a preference, filed in the District Court a petition to recover from the bank certain sums received by it, which petition was dismissed by the District Court in bankruptcy, whereupon the trustee took this appeal.

The appellee—that is, the bank—first filed a petition for dismissal of this appeal on the ground that there had been no final decree; but the order in the District Court dismissing the petition contained all the elements of a final decree, and was in such form as has been customarily accepted as such in bankruptcy proceedings.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The most convenient way of stating the facts is to recite them as they appear in the opinion of the learned judge of the District Court, which, although not strictly a part of the record, so far as we cite it is fully supported by the proofs. We will observe, however, that the word "payments," as used in the citation we make, covers proceedings by offset as well as payments according to the usual use of the word. The opinion states as follows:

"The payments to this bank which the trustee seeks to recover back as preferences voidable under section 60b of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) were on September 12, 20, and 30, and October 3 and 14, 1910. The payments were of $5,000 each, except that of October 3d, which was of $2,500. Adjudication was on January 9, 1911, under an involuntary petition filed December 16, 1910; the act of bankruptcy charged being a general assignment by the bankrupt on December 9, 1910.

"Each of the payments was from funds which had been from time to time deposited by the bankrupt to its own credit, and subject to its own checks, in a deposit account which it had maintained with the bank since 1906. Each payment was of a note which had previously been given to the bank by the bankrupt and which fell due at the time of the payment. The payments of September 12th, 20th, and 30th were each made by the bankrupt's check upon the deposit account referred to, given at the time by it to the bank for the purpose. In the case of the payments on October 3d and 14th the bank itself charged up the amount due on the note against the deposit account without asking the bankrupt's consent, but with its acquiescence, thus paying itself the amount due on the note without the use of any check to effect the payment."

We cite further from the opinion of the learned judge of the District Court to show the nature of the deposit account in question:

"In June, 1907, the bank discounted two notes of $2,000 each for the bankrupt, which were paid from its deposit account in October, 1907. In February, 1908, it had discounted three notes, amounting in all to $6,500, which were paid in like manner in September and October, 1908. In 1909, under an agreement to give the bankrupt a 'line of discount' amounting to $25,000, it discounted notes amounting to $15,000 in April, $10,000 in May, $10,000 in July, and $500 in September. Of these notes $25,000 in all were renewed during the year as they became due, and $10,500 in all were paid. Beginning with May 12, 1909, the total amount of these notes outstanding during the remainder of the year was at no time less than $25,000, and for a time in September, 1909, it stood at $25,000. Under a similar agreement, new notes amounting to $25,000 in all were discounted during 1910 at various times up to and including August 4th, notes to the same amount were renewed at various times to and including September 6th, and notes to the same amount were paid from the deposit account at various times up to and including July 22d; the total amount of notes outstanding being $25,000 in February, 1910, rising to a maximum of $30,000 in April, falling to a minimum of $10,000 on June 20th, and standing at $25,000 between August 4th and September 6th, inclusive. The successive payments claimed to be preferences reduced this amount after September 6th from $25,000 to $2,500; there being one note for that amount, given October 3, 1910, outstanding after the payment of October 14th. Exhibit 2, presenting in detail the dates and amounts of all the discounts, renewals, and payments during the entire period from June, 1907, to and including October 14, 1910, may be referred to.

"The deposit account above referred to began in 1906, and was continued up to December 2, 1910, a week before the general assignment mentioned, when it was closed on the books of the bank. It was at all times a regular general deposit account, subject to check by the bankrupt in ordinary course. Its state from day to day during the time of its continuance is shown by

transcripts from the bank's books (Exhibits 13 and 14), and is below referred to."

It thus appears that the account was of a fluctuating character, as might be expected from the nature of the business of the bankrupt corporation, which was that of conducting tours, some of them around the world, a business which is generally done more on credit, by anticipating the future, or on established good will, than on the amount of fixed capital or permanent assets.

Nevertheless, the circumstances are such that, under the amendatory bankruptcy act of June 25, 1910, the rule of this court in Hardy v. Gray, 144 Fed. 922, 75 C. C. A. 562, might not apply, except for the peculiar circumstances relating to all bank accounts kept in good faith, and the decisions in New York National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380 (January 4, 1904), and Lowell v. International Trust Co., 158 Fed. 781, 86 C. C. A. 137, decided by this court on December 17, 1907.

The circumstances in this case may not be in all particulars the same as in the cases cited; but the cases cited make such broad distinctions with reference to going bank transactions that the principles enunciated reach the appeal at bar. Those decisions seem to have regard to the necessities of public interests. These require that banks of deposit and discount should not be held to rules so strict as to embarrass, so far as it can be avoided, their transactions with the localities in which they are situated. And especially regard must be had to circumstances such as exhibited here, where credit is necessarily given, not merely on the faith of existing assets, but on the expectation of the results of hopeful enterprises, characteristics which may necessarily be involved in any long-continued enterprises such as those relating to world-round tours.

Of course, to be within the rule of the cases cited, good faith must exist, and there must be no deposits made after insolvency threatens, wholly or especially for the purpose of enabling a bank to secure an advantage over other creditors. In this case it is plain there was no such intention; and it is also plain that the deposits were honestly made, so that, within the somewhat artificial rule in Bank v. Massey, as stated in the opinion of Mr. Justice Day in behalf of the court, at page 147 of 192 U. S., at page 201 of 24 Sup. Ct. (48 L. Ed. 380):

"A deposit of money to one's credit in a bank does not operate to diminish the assets of the depositor."

It being the fact that the deposits were honestly made, and as also the bankruptcy statutes go beyond the common law, which allows set-off of all debts overdue, in that they also allow set-off of everything due and not due, when brought down to "present value" so far as the interest account is concerned, it follows that in the present case, as stated in Lowell v. International Trust Co., at page 784 of 158 Fed., at page 140 of 86 C. C. A., what the bank did was simply to give form to what the law itself would accomplish in substance. We will repeat here what we said there, namely:

"What the International Trust Company did in the case at bar, more than what was done in New York Bank v. Massey, was, as we have said, simply to give form to what the law itself accomplished in substance. Moreover, if what was done by the International Trust Company, in distinction from what was done by the creditor in New York Bank v. Massey, accomplished a preference, and for that reason was invalid or has been invalidated, the condition prior to the charging up the demand loans would have been restored by force of law, and the deposit would remain with the International Trust Company, precisely as it did in the case before the Supreme Court, and also the law would be left to operate in precisely the same manner. All this, therefore, raises no substantial difference which we can discover to relieve us from the conclusions of the Supreme Court in the case on which the International Trust Company relies."

In applying these broad principles, whether the depositor gave checks against his deposits for notes as they came due or notes which were overdue, or the bank delayed all proceedings until the petition in bankruptcy was filed, and thus evidenced a statutory set-off, was purely a matter of form; and it follows that the decision of the District Court was correct.

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.