## In re STARKWEATHER & ALBERT.

(District Court, W. D. Missouri, S. W. D. April 25, 1913.)

### No. 313.

1. BANKRUPTCY (§ 164*)—PREFERENCES—SET-OFF.

Bankrupts being indebted to a bank, on the maturity of one of their notes, the bank insisted on payment, threatening to charge the note against the bankrupts' deposit account. To prevent this, the bankrupts gave a check, postdated four days, so as to permit a recuperation of the

account to an extent sufficient to meet outstanding checks. The bank received such postdated check, and on its maturity cashed the same, and with the proceeds paid and retired the note. *Held*, that the bank, not having exercised its right to set off the note against the bankrupts' deposit account, having received payment of the note by means of a check, could not successfully claim that the payment was not preferential because of such right of set-off.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

2. BANKRUPTCY (§ 159*)—"PREFERENCE"—REQUISITES.

To constitute a "preference," within Bankr. Act July 1, 1898, c. 541, § 60, subd. "b," 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), the bankrupt must have made a transfer of his property within four months of the filing of the petition in bankruptcy, he must have been insolvent at the time, the transfer must have operated as a preference, and the person benefited must have had reasonable cause to believe that the enforcement· of the transfer would effect a preference.·

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248, 262, 268–281; Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

3. BANKRUPTCY (§ 164*)—PREFERENCES—EVIDENCE.

The cashier of a bank, to which certain bankrupts were indebted, with full knowledge of their financial condition and knowing them to be insolvent, refused to extend a maturing note and threatened to charge it against their deposit account unless paid. Under these circumstances, the bankrupts executed a postdated check, which the bank accepted in payment of the note on its maturity, charging the same against the bankrupts' deposit account, all of which was within four months prior to bankruptcy. *Held*, that such payment constituted a voidable preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. § 164.*]

In the matter of bankruptcy proceedings of Starkweather & Albert, a copartnership composed of Herbert Starkweather and John Albert. Application to set aside an alleged voidable preference to the National Bank of Webb City, Mo. On review of a referee's order in favor of the trustee. Affirmed.

Thomas & Hackney, of Carthage, Mo., for creditors.
Currey & Farris, of Webb City, Mo., for Starkweather & Albert.

POPE, District Judge. Starkweather & Albert, the bankrupts, borrowed $10,000 in the fall of 1910 from the National Bank of Webb City, Mo. There was no further amount borrowed, but the notes representing the transaction were renewed from time to time without any payments, except perhaps interest, thereon, so that in December, 1911, the original indebtedness still existed. Upon December 7, 1911, a note for $2,500, representing part of the original loan, fell due, and the cashier of the bank requested Starkweather & Albert to pay it, threatening to charge it against their account if they did not do so. Starkweather & Albert did not wish the amount charged against them, because, while the bank books showed on that date more than $2,500 to their credit, there were outstanding checks, some of which would go to protest if the amount were immediately charged against the ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

count. The matter was finally adjusted by the giving of a check, postdated to and payable on December 11th, so as to permit meanwhile a recuperation of the account to an extent sufficient to meet outstanding checks and this check given the bank. On December 11th the check was cashed by the bank and the note was paid and retired. On December 27, 1911, Starkweather & Albert gave a further check to the bank for $253.75, also in part payment of the indebtedness. This was paid on December 27th, the date it was given, and the note appropriately credited.

[1] The question here presented is whether these constitute voidable preferences under section 60 of the Bankruptcy Act. The trustee contends that they were; the bank, on the other hand, contends that they were in effect merely the exercise of the right of set-off given the bank by section 68 of the Bankruptcy Act, as construed in New York County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. Much of the argument for the bank is directed to demonstrating that a right of set-off exists, and that nothing in subsection "b" of section 68 detracts from the exercise of this right. The referee held that the right of set-off was not exercised, that the payments were preferential, and that the bank might not prove its claim save upon surrender of the payments. The facts as disclosed by the record and as above briefly outlined denude the case, in my opinion, of any question of the right of set-off. It is to be noted that, at least to some extent, the amounts deposited with the bank, and against which the check for $2,500 was to operate, were not deposited in the usual course of business, but were deposited with the specific understanding that they were to be used in meeting this check. While, as held in the Massey Case, supra, money deposited with the bank in the ordinary course of business creates a relation of debtor and creditor, and while in that case it is held that money so deposited may be applied by the bank as a set-off against any indebtedness by the bankrupt to it, it is distinctly indicated by the Massey Case that where a deposit is not made for general purposes, but for the purpose of creating a fund to be used in set-off, the privilege of set-off does not exist, and that the application of such money pursuant to such an arrangement is preferential. In re V. & M. Lumber Company (D. C.) 182 Fed. 231, so construes and applies the Massey Case, and in my judgment does so properly. It would follow, therefore, that so far as the deposit was made for purposes of this $2,500 check, and not for general purposes, it was tantamount to a payment direct to the bank, and possesses none of the elements of an allowable set-off.

However, it is not necessary to rest the case upon this ground, which perhaps only partially reaches the fund which the bank is alleged to hold preferentially. The matter may be disposed of upon a broader ground: That the bank did not stand upon its right of set-off. It simply threatened to exercise that right. The matter terminated, however, on the basis of voluntary payments by Starkweather & Albert, in giving checks which were received by the bank as payments. While the distinction seems narrow between a payment resulting from the exercise of the right of set-off and a payment by check given in the

presence of the power by the bank to exercise this right of set-off and application, yet the legal distinction exists, in that in the one instance the act is that of the bank, and in the other that of the debtor. The distinction seems to be recognized by the authorities. Ridge Ave. Bank v. Studheim, 145 Fed. 798, 76 C. C. A. 362; Irish v. Citizens' Trust Co. (D. C.) 163 Fed. 880; Germania Co. v. Loeb, 188 Fed. 289, 110 C. C. A. 263. The precise question seems to have been considered by the Supreme Court of the United States in Traders' Bank v. Campbell, 14 Wall. 87, 20 L. Ed. 832. In that case the bank had $325.20 on deposit to the credit of the bankrupt; the latter gave the bank a check therefor, which was credited on the indebtedness. The bank contended that, as it could have applied this amount in the exercise of its right of set-off, it was immaterial that the amount reached it through the medium of a check issued by the bankrupt. The court held, however, that under such circumstances the situation was one of a payment, and that there was no question of set-off to be considered. The language is as follows (italics ours):

"There was in the bank on deposit to the credit of Hitchcock & Endicott, on the day they gave the judgment note, the sum of $325.20. This sum was not computed or deducted when the note was given. On the next day, before the bank caused the judgment to be entered up, they credited this amount on the note, and took judgment for that much less. *They now assert that this was what they had a right to do, and that it should remain a valid set-off. But this does not appear to have been really what was done. It appears that Hitchcock & Endicott gave the bank a check for the sum, and by virtue of that check it was indorsed on the note as a payment.* Now, as both the bank and the bankrupts knew of the insolvency of the latter, this was a payment by way of preference, and therefore void by the thirty-fifth section of the Bankrupt Act. *In this case, as in the other, if they had stood on their right of set-off, it might possibly have been available; but when they treat it as the bankrupts' property, and endeavor to secure an illegal preference by getting the bankrupts to make a payment in the one case, and seizing it by execution in the other, when they knew of the insolvency, both appropriations are void.*"

The case just cited impresses me as excluding any question of set-off, and leaves the matter to be determined upon the question of whether the payments made were voidable preferences. This necessitates some quotation from the Bankruptcy Act. It is provided by section 57g, as amended (Act Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 [U. S. Comp. St. Supp. 1911, p. 1504]), as follows:

"The claims of creditors who have received preferences, voidable under section 60, subdivision 'b,' or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section 67, subdivision 'e,' have been made or given, shall not be allowed unless such creditor shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

Section 60, subd. "b," referred to in the section just quoted, is, so far as here material, as follows:

"If a bankrupt shall have * * * made a transfer of any of his property and if, at the time of the transfer, * * * and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer

would effect a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person." U. S. Comp. St. Supp. 1911, p. 1506.

[2] Section 67, subd. "e," also referred to in section 59g, above quoted, is not here relevant. The question, therefore, is whether these payments are voidable under section 60, subd. "b," just quoted. To constitute a voidable preference under this provision of statute, the following must concur: The bankrupt must (1) have made a transfer of its property (2) within four months of the filing of the petition in bankruptcy, and (3) at the time of the transfer the bankrupt must have been insolvent. (4) The transfer must have operated as a preference; i. e. (section 60a), its effect must have been to enable the bank to obtain a greater percentage of its debt than other creditors of the same class received. Swarts v. Fourth National Bank of St. Louis (C. C. A. 8th Cir.) 117 Fed. 1, 54 C. C. A. 387. Further, the bank or its agent must (5) at the time of the transfer have had reasonable cause to believe that the enforcement of such transfer would effect a preference.

[3] If all five of these conditions were present, the two payments were each voidable preferences. As to condition (1), there was evidently a transfer of property, for money is property within the meaning of this section. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171. Each payment was within four months of the filing of the petition in bankruptcy, so condition (2) exists. It is stipulated that at the time of the giving of these checks Starkweather & Albert were insolvent, so condition (3) existed. It is also evident from the record that allowing the bank to receive and retain these amounts will give it a greater percentage upon its claim than some other creditors of the same class will receive, and will thus destroy the equality of distribution which constitutes one of the cardinal features of the bankruptcy act. Condition (4), therefore, is present. As to condition (5), the referee by his finding against the bank necessarily found in the affirmative. There is testimony both ways upon this issue. The fact that the business of Starkweather & Albert was next door to the bank, and the bank thus necessarily knew that an adjusters' sale was being conducted: the further fact that the cashier of the bank was intimately acquainted at all times with the financial condition of the business, by reason of its being the sole bank with which Starkweather & Albert did business; the testimony of the representatives of two creditors that the bank cashier admitted to them, on or about January 30, 1912, that he had for months known of the insolvency of Starkweather & Albert, and that he knew they were insolvent when he received the payments—all these concur to support the finding of the referee that the bank had reasonable cause to believe that the payments would effect a preference to the bank.

It is true that there are circumstances developed by the record supporting the other view and tending to indicate that the bank had no such reasonable cause to believe that it was receiving a preference. Nor do we overlook in this connection the fact that the cashier of the bank denies making the statements attributed to him by the par-

ties representing the creditors. The referee, however, had all these matters before him. He heard and saw the witnesses as they testified before him. His finding is presumably correct. It is a proper rule of procedure that such will not be disturbed, unless there is a misinterpretation of the law or an evident misapprehension of the facts. Coder v. McPherson (C. C. A. 8th Cir.) 152 Fed. 951, 82 C. C. A. 99; In re Cox (D. C.) 199 Fed. 952. The present record affords no ground within the rule for overturning the finding of the referee upon this question of fact.

The result is that the order of the referee appealed from must be affirmed.