### RAMEY-MILBURN CO. v. EAVES.

### In re COCHRAN.

(Circuit Court of Appeals, Eighth Circuit. October 19, 1922.)

### No. 5908.

Bankruptcy ⬦212—Evidence insufficient to show sale was on consignment, or that title was reserved by agreement until sale by bankrupt.

In a proceeding to reclaim flour and shorts delivered to a bankrupt dealer by the petitioner, evidence *held* insufficient to show that the goods were consigned to the bankrupt for sale on commission, or that there was any agreement that title was reserved or to show error in the findings of the referee and District Court that there was a sale on credit.

Appeal from the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Proceeding in bankruptcy, in which the Ramey-Milburn Company intervened and filed petition for the surrender of certain property, which was opposed by J. H. Eaves, trustee in bankruptcy of R. E. Cochran. A decision of the referee in favor of the trustee was sustained by the District Court, and the intervener appeals. Affirmed.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John T. Hicks, of St. Louis, Mo., Brundidge & Neelly, of Searcy, Ark., and Cornwell, Hicks & Gary, of St. Louis, Mo., for appellant.

Sam T. Poe, Malcolm W. Ganaway, and Tom Poe, all of Little Rock, Ark., for appellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

SANBORN, Circuit Judge. Mr. R. E. Cochran was adjudged a bankrupt by the court below on December 31, 1919, and the appellee J. H. Eaves is the trustee of his estate in bankruptcy. The Ramey-Milburn Company intervened in the bankruptcy proceedings, and filed its petition for the surrender and delivery to it of 527 sacks of flour and 56 sacks of shorts, part of a carload of flour and feed which was in the possession of the bankrupt and which came from his possession to that of the trustee. The Ramey-Milburn Company alleged in its petition that it consigned this carload of flour and feed to Mr. Cochran about November 13, 1919, pursuant to an agreement between it and Cochran that the title thereto should remain in it, and that Cochran should sell it and pay for it as he sold it. In his answer to this petition the trustee denied this alleged contract of consignment, and averred that the flour and feed were bought from the petitioner by Cochran on credit, that the title to them vested in him, and that the relation between him and the petitioner became that of debtor and creditor. The issue thus made was heard by the referee and decided in favor of the trustee. On petition for review, that decision was, by order of the District Court below, sustained, and the petitioner has appealed from that order to this court.

When the petitioner caused this carload of flour and feed to be shipped to Mr. Cochran it sent him an invoice thereof in the form customarily used by it and other merchants to evidence a sale of the goods described. It specified the goods shipped, the purchase price of each class, and the aggregate price, $1,963.50. This invoice contained no statement or memorandum of any reservation of title in the petitioner of any consignment for the petitioner's use or benefit, or of any commission or sale on commission. Mr. Billingsley, the secretary, director and traveling salesman of the petitioner, testified that this car was billed out just as the petitioner billed all cars.

To overcome these facts and the legal presumption of the correctness of the findings of the referee and the District Court, counsel for the petitioner rely upon these circumstances: The petitioner paid the freight charges for the shipment of the carload to Mr. Cochran. Mr. Billingsley testified that the petitioner was to put the car of flour and feedstuff in Mr. Cochran's grocery store; that he was to sell it on commission; that it was to be the property of the petitioner until it was sold; that he sold two cars of flour and feedstuff to Mr. Cochran, one on September 17, 1919, and one on November 13, 1919; that the latter was the car in controversy; and that he sold both cars on the same condition. Mr. Jackson, a clerk in Mr. Cochran's store, testified as follows:

"Q. Do you know what the understanding was as to whose flour it was? A. Well, it was on a commission basis."

Cross-examination: "Q. What do you mean by commission basis? A. I suppose you call it commission; it was to be paid for when sold."

Asked on redirect examination to state the conversation, he answered:

"That would be a mighty hard thing to do. They [referring to Mr. R. E. Cochran and Mr. P. A. Billingsley] were talking about feed supplies, and the first thing that came to my notice Mr. Cochran said he had decided not to buy any more carloads of feed, and Mr. Billingsley said something about a car of flour to be paid for along as sold, and I don't remember what Mr. Cochran said, but he did say that struck him pretty well."

Mr. Cochran made a statement on December 6, 1919, and an affidavit on December 21, 1919, and the parties stipulated that these were admitted as his testimony as if he were present and testified. In the certificate he stated that the last car of flour and feed shipped November 13, 1919, "was to be put in and paid for as sold, the same to be at the disposal of and owned by Ramey-Milburn, or to explain further, to be sold on commission." In his affidavit he testified that he bought only two mixed cars of flour from the petitioner; that he paid for the first carload every week, not according to what he had sold but according to what he could spare; that one week he made them a payment of $700; that ordinarily it ran from $100 to $300; that "Mr. Billingsley, their traveling man, came to solicit orders, and I hesitated about giving him any order, and I told him that business was in a bad shape, collections were slow, and it was raining all the time, and I didn't know what about it. He said, 'Let's take your order, and we will see about it.' As well as I can remember he said, 'Possibly you can pay for it as you sell it.'" He testified that he did not remember that the word "commission" was used, that nothing was said about the property of the goods remaining in the petitioner as he remembered; that he sold some of this car; that he did not know how much; that he paid $100 on November 26, 1919, and that "I remitted to them as I did to others, just as I had the money to spare. I wouldn't say whether it was sold under consignment. I think they took it for granted that I would pay for it as it was sold."

All the substantial evidence in this record has now been recited. Upon this evidence the referee and the District Court found that the petitioner sold the flour and feed in controversy to Mr. Cochran on credit, to be paid for by him as he sold it, and the evidence in this record falls far short of convincing that there was any mistake in this finding or that the minds of Billingsley and Cochran ever met upon any agreement that the title to this flour and feed should be reserved in the possession of the petitioner until Mr. Cochran sold them, or that the goods were consigned to him to sell on commission. The order below must therefore be affirmed, with costs.