### ROCKMORE v. AMERICAN HATTERS & FURRIERS, Inc., et al.

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 23.

**I. Bankruptcy ⬅140(3).**

Owner of furs, consigned to bankrupt for sale, might reclaim as many thereof as he could find in specie, either in bankrupt's possession or in possession of others, after paying lien held by them.

**2. Bankruptcy ⬅165(2)—Owner of furs consigned to bankrupt for sale might take and retain part of proceeds of notes constituting value of furs, but balance was part of bankrupt's assets, transfer of which constituted preference.**

Owner of furs consigned to bankrupt for sale might rightfully take and retain that part of proceeds of notes which constituted original value of furs, but balance constituted general assets, which bankrupt could not transfer in recoupment for other skins sold, proceeds of which he had dissipated.

**3. Bankruptcy ⬅165(2).**

Furs retaken by consignor in recoupment for others consigned to bankrupt for sale constituted general assets of bankruptcy, and retaking constituted unlawful preference.

**4. Bankruptcy ⬅159—Owner of furs, sending them to del credere agent for sale, was liable with agent for preference received from bankrupt, to whom agent consigned furs.**

Owner of furs, sending them to del credere agent for sale, although not creditor of bankrupt, to whom agent had consigned them, was liable with agent for preference received from bankrupt.

**5. Bankruptcy ⬅159—Owner of furs, sending them to del credere agent for sale, cannot claim to be bona fide purchaser of notes reclaimed by agent from bankrupt, to whom he had consigned furs.**

Owner of furs, sending them to del credere agent for sale, is charged with agent's knowledge of insolvency of consignee for resale, and cannot claim to be bona fide purchaser of notes reclaimed by agent and constituting preference.

Appeal from the District Court of the United States for the Southern District of New York.

Action by Max Rockmore, as trustee in bankruptcy of Jacob Gross, bankrupt, against the American Hatters & Furriers, Inc., and another. From a decree dismissing the bill against the named defendant, plaintiff appeals. Reversed and remanded.

Appeal by the plaintiff from a decree of the District Court for the Southern District of New York, dismissing a bill in equity as against the defendant in a suit to recover property and moneys received on an alleged preference under the Bankruptcy Act (Comp. St. §§ 9585–9656).

The defendant was the owner of certain bales of undressed and undyed rabbit skins, for which it sought a market. One Bleetstein, a merchant in New York, acted as its general agent in the disposal of such goods, and to him it sent the skins from Danbury for sale in New York. Bleetstein was in general authorized to sell the defendant's goods, in its name or his own, at such prices as seemed best to him, and he got a commission for doing so. It was part of the

arrangement that he should guarantee the credits of all buyers to whom he sold, and, when the defendant shipped him goods, it charged them against him on its books, and credited him only on his report of a sale. If the buyer defaulted, the charge was reinstated, and he was looked to for the price. This course was followed in the case of these skins.

Bleetstein, without the defendant's knowledge, suggested to Gross, the bankrupt, some time in July or August, 1923, that he should take some 44 bales of these skins and sell them on a 10 per cent. commission, getting them dressed and dyed, retaining out of the proceeds, when sold, his advances and commissions, and accounting to him (Bleetstein) for the balance. Neither Bleetstein nor Gross regarded this transaction as a sale, and some weeks later Bleetstein got from Gross a "trust receipt," so called, which declared that the skins had been received on consignment to sell on Bleetstein's account.

Gross had the skins dressed and dyed, and sold the greater part. The cash which he received upon the sales he dissipated, though he retained certain notes, which had not become due. He got into financial straits late in September, and it became important for Bleetstein to secure the skins or their proceeds. He thereupon persuaded Gross to give him an order upon a dyer for part of the skins still unsold, secured from him the notes which Gross had not collected, and procured from him, in partial recoupment for the proceeds which Gross had converted, a parcel of other skins of substantially like quality. It was conceded that the circumstances surrounding this transaction were such as proved that Bleetstein knew Gross to be insolvent.

The plaintiff's theory was that Bleetstein had sold the skins to Gross as the defendant's agent, and that the defendant, being a creditor, was liable to return all that Bleetstein had received, whether in the form of the original skins sold, their proceeds, or the skins given in recoupment. The learned District Judge held that the transaction was not a sale, but a consignment for sale, and that Bleetstein was justified in recovering such of the skins as remained in specie upon payment of the dyer's lien; further, that the notes represented in part the skins and in part Gross's advances to the dyers and dressers. So far as they represented the value of the skins, Bleetstein was justified in holding the proceeds, but not the remainder; this being necessarily a recoupment for Gross's

conversion of the proceeds of other sales. As to the skins turned back in recoupment, he held that Bleetstein was fully accountable. Finally, he held that the defendant was not liable, though it received the benefit of what Bleetstein had received, since under the arrangements between itself and Bleetstein it did not become a creditor of Gross. He therefore dismissed the bill as to the defendant, but held Bleetstein liable as above set forth.

The plaintiff appealed from the decree dismissing the bill, and demands a recovery against the defendant, not only to the extent of Bleetstein's liability as decreed, but also to the full extent of all the skins and moneys transferred by Gross in extremis.

David Haar, of New York City, for appellant.

C. Edward Benoit, of New York City, for appellees.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). We see no reason to differ with the learned District Judge in his finding that the transaction between Bleetstein and Gross was not a sale. Indeed, there is no substantial evidence to the contrary. Gross's testimony, which alone could be counted on to establish one, is to the last degree unsatisfactory, yet, so far as it permits of intelligible understanding, it seems to us to bear out Bleetstein's story that he did not mean to accept Gross as a buyer, but to give him the skins to sell on commission. It is true that his language is not wholly consistent, but he was ignorant, spoke English badly, and it is impossible to reconcile all that he said. At worst, it was a fair question of fact, and we are not disposed to disturb the finding of the experienced judge who saw the witnesses and reached his own conclusion.

[1-3] This being true, there was nothing unlawful in Bleetstein's reclaiming so many as he could find in specie, either in Gross's possession or in that of the dyers, whose lien he paid. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345. Similarly, as to the notes of the buyers from Gross, we agree that, so far as these represented the original value of the skins, independently of Gross's payments for their dressing and dyeing, Bleetstein might retain their proceeds. As to the remainder, Gross had a lien on the notes, and they were general assets in his hands, which he might not

transfer to Bleetstein in recoupment for other skins, whose proceeds he had dissipated. Finally, we agree that the skins, received in recoupment for those skins which Gross had sold, and whose proceeds he had converted, were also general assets, and might not be so transferred. In short, we altogether agree with the division of the property received.

[4] However, it seems to us that the defendant, although it was not a creditor of Gross in the sense of accepting him as a purchaser, was Bleetstein's principal, and was equally liable with him, to the extent that he took property, not its own, in satisfaction of Gross's liability, arising from his conversion of the purchase price of its skins. The relation of Bleetstein to the defendant was that of a del credere factor, who is none the less an agent, though he guarantees the credit of those buyers whom he selects. The fact that, upon shipping goods to Bleetstein, the defendant charged him on its books, did not change the relation manifested by the fact that he was to receive only a commission upon their sale, and might return them if he was unable to sell. On the one hand, the defendant retained title to the skins both in Bleetstein's hands and in Gross's; and, on the other, it was charged with Bleetstein's knowledge at the time when he received the preference.

Therefore it makes no difference whether Gross knew the defendant in the transaction or not. If not, the defendant was none the less Bleetstein's undisclosed principal, and when Gross sold the skins and converted the proceeds he became liable as well to the defendant as to Bleetstein. Nor does it matter whether Bleetstein exceeded his authority in consigning the skins. They remained none the less the defendant's. When Gross sold them, he may have converted them; that is, if Bleetstein had no power to authorize their sale, but only to sell them himself. If so, Gross was personally liable to the defendant, whose agent might not receive a preferential discharge of that liability. If, on the other hand, Bleetstein was authorized, while Gross's sales were not a conversion, the proceeds still were the defendant's, as the skins had been. His conversion of these created a liability to the defendant, and that might not be preferred.

The only difference which can arise from Bleetstein's lack of authority is that the whole value of the notes might then be a liability of the defendant's on which no payment would stand. But certainly Bleetstein was acting in the defendant's behalf; if so, it could ratify his attempted bestowal on Gross of a power to sell. This would make the notes, to the extent of the value of the raw skins, its property, and allow it to retake them pro tanto. It may assert its right to ratify Bleetstein's exercise of a dubious authority. Hence it is liable on any theory to the extent that Bleetstein was held liable, but to no more.

[5] Moreover, the defendant may not claim to be a bona fide purchaser for value on the theory that, when Bleetstein turned over the proceeds, he was discharging his obligation to the defendant as a del credere factor. It was charged with Bleetstein's notice of Gross's insolvency when he collected the salvage.

Since Bleetstein did not appeal from the decree against him, he is not a party in this court. The decree against him cannot, therefore, be disturbed; but the decree dismissing the bill against the defendant is reversed, and the cause remanded for further proceedings in accordance with the foregoing.