### H. D. LEE CO., Inc. v. BOSTIAN.
### JENKINS MUSIC CO. v. BOSTIAN.

Nos. 14228, 14227.

United States Court of Appeals
Eighth Circuit.

March 28, 1951.

---

Glen L. Whitaker and Thomas D. Circle, Kansas City, Mo. (James B. Nourse and W. Arnold Brannock, Kansas City, Mo., on the brief), for appellants.

A. L. Quant, Kansas City, Mo. (W. S. McClintock, Kansas City, Mo., on the brief), for appellee.

Before COLLET and STONE, Circuit Judges, and DELEHANT, District Judge.

COLLET, Circuit Judge.

These appeals involve two cases. Both were instituted in the United States District Court by William B. Bostian as trustee in bankruptcy against the H. D. Lee Company, one of the appellants, and the Jenkins Music Company, the other appellant, to recover money received by them in satisfaction of judgments obtained by them against James B. Carter and his wife, Ethel H. Carter, co-partners, doing business as Henrietta Appliance and Plumbing Company, within four months of the Carters' adjudication as bankrupts. The appellee, who will be referred to as the plaintiff, obtained judgments in the trial court against both appellants upon the ground that the payments were preferences because made within four months of the filing of the voluntary petitions in bankruptcy at a time when both partners were insolvent and when the appellants knew or had reasonable cause to believe that such insolvency existed. The separate voluntary petitions of the Carters for adjudication in bankruptcy were filed on September 20, 1948. There were no other partners in the business. Soon thereafter, upon the application of a creditor, the partnership was adjudicated bankrupt and the proceedings were consolidated. Mr. Bostian was selected as the trustee for the bankrupt partnership, as well as the

individual partners, and brought these actions as trustee for both the partnership and the individuals.

In the court below and here, the appellants, who will be referred to as defendants, resisted the trustee's action for the repayment of the aforesaid payments mainly upon the ground that, first, at the time of such payments the Carters and the partnership were not insolvent; second, that at the time of the payments defendants did not know or did not have reasonable cause to believe that such insolvency existed; and, third, that such payments could not constitute preferences since James B. Carter, having subsequent to his adjudication in bankruptcy been convicted of the crime of fraudulently concealing assets from his trustee in bankruptcy could not obtain a discharge in bankruptcy, and that therefore the creditors other than defendants are free to proceed against him for the satisfaction of their claims. As indicated, the trial court found against defendants on all three questions. It is from that finding and judgment that these appeals are prosecuted.

■ In support of their contention that the trial court erred in finding that the bankrupts were insolvent at the time the payments were made, both defendants rely heavily upon the confidence they placed and insist they were entitled to place in Dun & Bradstreet reports made by James B. Carter, one in January, 1947, the other in January, 1948, in which James B. Carter showed a partnership net worth of $8,150 in January, 1947, and of $14,050 in January, 1948. On oral argument counsel intimated that as the payments were comparatively small, both being between $400 and $500, that one of the principal reasons for these appeals was to obtain an indication from this court as to the reliance which creditors could place in the event of subsequent bankruptcy upon financial reports such as these, made and obtained in the usual course of business. Under the facts and circumstances of these cases, there can be no such authoritative indication. And that is true because, without minimizing the value of such reports as evidence in bankruptcy proceedings or for other purposes, they must be considered in connection with all of the other evidence bearing upon the question of solvency, knowledge thereof, or reasonable grounds for knowledge thereof. And if in the evidence as a whole there be found reasonable support for the trial court's findings, those findings must stand.

■ We first consider the question of the sufficiency of the evidence to support the finding of the trial court to the effect that James B. Carter and Ethel H. Carter were actually insolvent at the time the payments were made. In the financial statement of January 10, 1947, James B. Carter showed the assets of the partnership as $8,250, consisting of $2,700 cash in the bank, $200 in accounts receivable, $500 in machinery and fixtures, $500 in merchandise, $4,000 in real estate and buildings, and $350 in government bonds. Liabilities were shown in the amount of $100 leaving a net worth of $8,150. Net sales were reported in the amount of $500 per month. In the financial statement of January 19, 1948, Mr. Carter showed total assets of the partnership in the amount of $14,500, consisting of $700 cash in the bank, $500 accounts receivable, $8,000 worth of merchandise, fixtures and equipment of $1,000, real estate of $4,000, and a personal account of $300. Liabilities were listed at $450, and net sales of $1,500 per month. Both of these financial reports are concededly incorrect. The Carters did not own the real estate valued at $4,000, it having previously been sold, the $8,000 listed as merchandise was incorrect, and considerable question exists as to the amount of cash on hand.

The evidence indicative of insolvency consisted of testimony to the effect that the business was carried on in a one-story brick building in Henrietta, Missouri. A partition separated the front part of the building in which the business was operated from the room in the rear which was used as living quarters. Back of the brick building was a warehouse used for storage purposes. Practically all of the physical assets were in the front room of the building. They consisted of plumbers' equipment, some electrical appliances, tools, some

general merchandise, and office fixtures. Mrs. Carter, who kept the books and was active in the conduct of the business, testified that as a result of the relocation of a state highway and the opening of a new highway which served the town of Henrietta, their business was ruined and that thereafter they had practically no business. Mr. Carter testified that the opening of the new highway was some time late in 1947. They had sold the real estate valued at $4,000 in the financial statements before. opening their business and used the proceeds of that sale in the establishment of the business. The individual petitions in bankruptcy were filed on September 20, 1948. The adjudications in bankruptcy were dated the same day. The partnership adjudication in bankruptcy was on September 30, 1948. It appears that the major part of the H. D. Lee account was contracted in the fall of 1947, subsequent to October. Charges were made to that account in the spring of 1948. The last payment on the account was of $16.07 made on April 5, 1948. Judgment was obtained June 21, 1948. Levy of the execution under the judgment was made August 24, 1948, and the Execution Sale was held on September 8, 1948. The Jenkins account was opened about January 23, 1948. Credit was extended by that defendant up to and including June 2, 1948. Two invoices were paid on the Jenkins account by the Carters in March, 1948. Those were the only payments on that account. The testimony of the Carters is to the effect that the H. D. Lee salesman was also its collector, that he called at the bankrupts' place of business regularly, about once a week; that as early as March or April, 1948, Mrs. Carter, who usually was the only one at the store when he called, informed the salesman-collector that their business was very bad on account of the relocation of the highway, that they could not pay their creditors and that they would have to treat them all alike and pay something on each account as they could. No payments were made, as heretofore indicated, after April 5 on the Lee account. The reasonable inference to be drawn from the evidence is that there was no material change in the amount or value of the stock on hand in the store building from the early spring of 1948 down to the time when both defendants secured judgment and the Execution Sale was held on September 8, 1948. At the time of that sale all of the assets sold brought a total of $1,317.25. Out of the proceeds of the sale both defendants were paid their accounts and the balance of $334.47 was paid to the Carters. That sale was of course a forced sale and the proceeds thereof therefore may not and very probably do not represent the fair value of the property sold. The purchaser of $1,200 worth of the assets which were sold for $1,317.25 indicated that the purchase price of the assets he bought might represent only twenty to forty per cent of the full value. The evidence indicates that he resold these assets which he bought for $1,200.00 for about $1,700. But Mrs. Carter testified that the entire stock was only worth from $4,000 to $5,000. In addition to the stock that was sold, it was later found that the bankrupts possessed other stock upon which someone placed a value of $900; that they had an equity in a trailer of $200, about $100 worth of furniture, and an old automobile worth $100. Mrs. Carter placed a value of approximately $200 on the unreported stock referred to above as having a possible value of $900. The old automobile was mortgaged. The furniture was exempt. Mrs. Carter testified that they owed general creditors about $6,500. The schedules in bankruptcy showed total claims of $5,824.67, exclusive of the Lee and Jenkins accounts of approximately $900.

About August 15, the Carters locked up the store and the entire family went to Kentucky in a truck. They testified that they took no stock from their store to Kentucky with them. They do indicate that at the time they were thinking about selling out and moving their place of business to another location. The fact that they were gone and the store was locked up was reported to the H. D. Lee Company. Execution was promptly issued upon the Lee Company's judgment theretofore obtained in the Magistrate Court, and an attachment suit was filed on August 21, 1948,

by the Jenkins Company. The levy of the execution on the Lee Company judgment was made on August 24 by the sheriff who, with the Lee Company's attorney, went to the place of business and finding it closed and padlocked, the attorney made inquiry in the neighborhood and obtained information to the effect that the Carters had left the state in a truck and had taken part of their stock of goods with them. Thereupon, the sheriff put another lock on the door and posted notices of the levy of the execution. In the affidavit for the attachment filed by the Jenkins Company it was alleged among other things that the Carters had absconded and absented themselves from their usual place of abode and that they were about to move their property and effects out of the State of Missouri with intent to defraud, hinder and delay their creditors, and that they had fraudulently concealed, removed, or disposed of their property and effects so as to hinder and delay their creditors. For many months efforts had been made by both defendants to obtain some payment on their accounts without success.

From the foregoing facts and other details which need not be recited, the trial court found that insolvency existed at the time of the enforced collection of the defendants' judgments. We cannot say as a matter of law that the trial court's conclusion was not based upon adequate evidentiary support. We must therefore approve that finding.

■ On the question of whether the finding of the trial court that the defendant Lee Company knew or had reasonable cause to believe that the Carters were bankrupt at the time that the payment to that defendant was made, was justified, or for which there is reasonable evidentiary support, we note that the testimony of the Carters is to the effect that early in the year 1948 the Lee Company's salesman-collector was informed that the business had been ruined by the relocation of the highway late in the preceding year; that no payments had been made on the account after April 5; that in spite of the value of the stock as listed in the financial statements, practically all of that stock was in the place of business, readily observable to the collector and clearly not worth nearly as much as the financial statement indicates; that the Carters told them that they could not pay their creditors and would have to divide what they could pay among all of their creditors, treating them all alike; that if these latter statements were true, as the trial judge had the right to conclude, the statement in the financial report relative to cash assets could not have been correct, or at least that those funds had been dissipated. Then when the information was reported to the Lee Company by its collector that the Carters had locked up their place of business and left the state, the levy of the execution could in the opinion of the trial court have been justifiably deemed inconsistent with an opinion by the defendant that the Carters were still solvent and able to pay their debts.

In connection with the finding of the trial court that the Jenkins Company knew or had reasonable cause to believe that the Carters were insolvent at the time of the payment to them on their judgment, we note that its representative had also made considerable effort to collect that account for a considerable period of time; that there had been no payment on their account since March 24, 1948; that notice of the account being due and subsequent letters requesting payment obtained no response; that then the collector for Jenkins undertook to get Mr. Carter on the telephone and, failing to reach him, that a telegram was sent him with no results; that then the account was turned over to their attorney, a man of experience and competency, who promptly instituted an attachment suit on August 21, 1948, and in the affidavit made in support of the issuance of the writ of attachment he made the statements heretofore noted relative to the belief that the Carters had absconded and were undertaking to defraud their creditors; that when this attorney's associate counsel investigated the facts immediately before and at the time of the Execution Sale and the payment to the Jenkins Company on September 9, 1948, and had an opportunity to observe the

quantity and value of the stock, that it was readily apparent that the stock was not nearly so valuable as the financial statements indicated, or that the cash assets reported in those statements were very probably not in existence, and that apparently all of the stock of goods had been seized and was about to be sold for the satisfaction of a judgment for less than $500. We cannot say that the trial court's conclusion that the Jenkins Company had reasonable cause to believe that the Carters were insolvent is without evidentiary support. We must therefore approve those findings.

The question of whether the conviction of James B. Carter for fraudulently concealing assets from his trustee in bankruptcy and his consequent inability to obtain a discharge in bankruptcy prevents the payments to the defendants from constituting a preference on the ground that the other creditors are free to proceed against him for the satisfaction of their claims presents a purely legal question. Defendants cite 8 C.J.S., Bankruptcy, §§ 510 and 519, Gordon v. Davis, 6 W.W.Harr. 238, 173 A. 528, Tutt v. Fighting Wolf Mining Co., Mo.App., 209 S.W. 304, in support of their contention that there can be no preference because one of the bankrupts cannot obtain relief from his debts by discharge in bankruptcy. Those authorities go no further than to simply hold that the discharge is a personal privilege of the bankrupt dependent on the square dealing and honest purpose of the bankrupt, and that in the event of a denial of the discharge the bankrupt's creditors may still press their claims for payment. The very fact that the discharge of the bankrupt and his subsequent immunity from the enforced payment of his debts is a personal privilege carries no implication that his failure to obtain the discharge affects the right of all of his creditors to the equal participation in his assets provided for by the preference section of the Act. 11 U.S.C.A. § 96. On the contrary, the implication from those authorities, if any there be, is to the effect that the discharge, being a personal privilege of the bankrupt, cannot affect the rights of creditors given them by the preference section. That is in our judgment the correct interpretation to be given both provisions of the Act, 11 U.S.C.A. §§ 32, 96.

The judgments should be and are affirmed.