**C. A. SWANSON & SONS POULTRY COMPANY, Appellant,**

v.

**William A. WYLIE, Trustee in Bankruptcy for the Manuel Delatorre d/b/a R & M Egg Farms, Bankrupt, Appellee.**

No. 14852.

United States Court of Appeals Ninth Circuit.

Sept. 13, 1956.

Norman A. Obrand, Los Angeles, Cal., for appellant.

Craig, Weller & Laugharn, C. E. H. McDonnell, Frank C. Weller, Thomas S. Tobin, Los Angeles, Cal., for appellee.

Before BONE, McALLISTER and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

This bankruptcy proceeding was commenced by the filing of an involuntary petition in bankruptcy on August 20, 1953, and Manuel Delatorre (herein occasionally called "bankrupt") was adjudged a bankrupt on September 9, 1953.

On May 29, 1953, within four months of the commencement of this bankruptcy proceeding, the bankrupt was indebted to the appellant, C. A. Swanson & Sons Poultry Co. (herein occasionally called "Swanson"), in the sum of $16,830.78 for merchandise previously sold and delivered to the bankrupt on open account.

Beginning on June 5, 1953, the bankrupt made seven payments to the appellant, C. A. Swanson & Sons Poultry Co., a corporation. These payments amounted to a total sum of $12,267.05. Each one of these seven payments was made within four months of the commencement of the bankruptcy proceedings against Manuel Delatorre.

The district court found that Manuel Delatorre, doing business as the R & M Egg Farms, was insolvent on May 29, 1953, and continued insolvent at all times thereafter. The court further found that on May 29, 1953, and at all times thereafter, and specifically on the dates of the payments to appellant,[1] Swanson had reasonable cause to believe that the bankrupt was insolvent.

As a result of these payments by Delatorre to Swanson, the district court found that appellant obtained a greater percentage of payment on its debt owing from the bankrupt than has been made, or will be made, to other creditors of the same class.

The district court concluded the seven payments to appellant constituted a preference under Section 60, sub. a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 96, sub. a, and that this preference is a voidable preference under Section 60, sub. b, of the Bankruptcy Act, as amended. The court granted trustee judgment in the sum of $12,267.05 against C. A. Swanson & Sons Poultry Co., together with interest and costs.[2]

Appellant apparently raises only one issue on this appeal: Whether the appellant (Swanson) knew, or had reasonable cause to believe from the facts available to it, that the bankrupt was insolvent at the time the payments were made to appellant.[3] The district court found

---

1. The seven payments were made on these dates: June 5, 1953; June 10, 1953; June 22, 1953; July 6, 1953; July 13, 1953; July 14, 1953; July 20, 1953.

2. The court further " * * * Ordered, Adjudged and Decreed that the Defendant, C. A. Swanson & Sons Poultry Co., shall be entitled to file its claim against the bankrupt estate of Manuel Delatorre, dba R & M Egg Farms * * * provid-

ed the said Defendant shall pay all sums due under this judgment within 30 days from and after the date of the final judgment herein."

3. Both parties failed to comply with portions of Rule 18(2) of the Rules of this Court. Because the briefs do not include a specification of errors it has been difficult to "pinpoint" the issue for decision. However, the parties in their briefs

that appellant did have reasonable cause to believe the bankrupt to be insolvent. Appellant alleges the evidence is insufficient to support this finding.

We conclude that there is substantial evidence in the record to support the findings that the bankrupt was insolvent at the time the payments in question were made, and that from the facts and circumstances known to appellant at the time and times the payments were made, the court could legitimately find that appellant had reasonable cause to believe that Delatorre was then insolvent.

■■ The record shows the following: (1) testimony by a certified public accountant employed by the trustee in bankruptcy (appellee) that the business records of Delatorre showed liabilities in excess of assets as early as November 26, 1952; Delatorre's accountant testified that the liabilities exceeded assets on March 29, 1953, and that there was no improvement thereafter; (2) checks issued by Delatorre during May, 1953, to Swanson in payment for merchandise were returned to Swanson NSF;[4] (3) about May 1, 1953, the debtor was called to the office of appellant and, according to the testimony of the bankrupt, appellant's assistant manager stated to him that "things didn't look so good," and then reduced appellant's credit to the bankrupt;[5] (4) about June 1, 1953, Elmo Cross, assistant manager of C. A. Swanson & Sons, and a Mr. Elliott, an accountant and credit manager of appellant, visited Delatorre's place of business, took "inventory of everything," and examined Delatorre's books, and put him on a "cash basis";[6] (5) and on the same day, Cross and Elliott asked for a chattel mortgage on Delatorre's "fixtures, trucks and everything else," which mortgage was executed sometime later,[7] and is dated June 12, 1953. This mortgage was not recorded, and is not relied on in this proceeding.

Appellant contends that the only evidence with respect to the claim that appellant had reasonable cause to believe the debtor insolvent consisted of the re-

and in oral argument indicate that the sole question is whether the evidence is sufficient to support a finding that Swanson had reasonable cause to believe that the bankrupt was insolvent at the time the bankrupt made the payments to Swanson. Appellant also seems to contend that there is insufficient evidence to support the finding that Swanson obtained a greater percentage of its debt than did other creditors. We disagree.

4. Protest or return of checks NSF is notice of insolvency and places one upon inquiry. Conners v. Bucksport Nat. Bank, D.C.Me.1914, 214 F. 847, 850; Robie v. Myers Equipment Co., D.C.Minn. 1953, 114 F.Supp. 177, 182; Eisnaugle v. Blank, D.C.E.D.Pa.1954, 125 F.Supp. 390, 394; Canright v. General Finance Corporation, 7 Cir., 1941, 123 F.2d 98, 99. Cf. Brown Shoe Co. v. Carns, 8 Cir., 1933, 65 F.2d 294, 297; Pittsburgh Plate Glass Co. v. Edwards, 8 Cir., 1906, 148 F. 377, 378. 3 Collier on Bankruptcy (14th Ed., 1941), § 60.54, pp. 1005–1006; 4–A Remington on Bankruptcy (5th Ed., 1943), § 1709, p. 229.

5. There was conflict in the testimony as to the amount of credit usually given to Delatorre and the reduction in the credit time available to him. Delatorre testified that he usually was given 30 days to pay for purchases, whereas Swanson's officer testified it usually gave Delatorre about 10 days. Both parties agree that credit terms were reduced.

6. Cf. In re Poston Const. Corp., D.C.N.D. Ohio, 1953, 115 F.Supp. 323, 331 (notice from audit of Bankrupt's business records). It should be noted that appellant accepted some ordinary business checks even after putting Delatorre on a "cash basis."

7. The taking of a chattel mortgage covering all the stock in trade is notice of insolvency. In re Kent's Inc., D.C.Me.1934, 9 F.Supp. 216, 217; In re Marcella Chocolate Co., D.C.Mass.1924, 299 F. 324, 325; Pierre Banking & Trust Co. v. Winkler, 1917, 39 S.Dak. 454, 165 N.W. 2; Marin v. A. Y. McDonald Mfg. Co., 1924, 159 Minn. 447, 199 N.W. 176; Pollock v. Jones, 4 Cir., 1903, 124 F. 163; In re Brayton, D.C.N.D.N.Y.1922, 276 F. 1020; In re Clark, D.C.W.D.Mich. 1926, 11 F.2d 540. Cf. Margolis v. Gem Factors Corp., 2 Cir., 1953, 201 F.2d 803, 805. See also 3 Collier on Bankruptcy (14th Ed., 1941), § 60.54, p. 1008; 4–A Remington on Bankruptcy (5th Ed., 1943), § 1709, pp. 229–230.

turned checks. Appellant's officer Cross testified that from inspection of the books on June 1, 1953 it appeared that Delatorre had a net worth of about $15,000. Appellant also appears to have placed considerable reliance upon a Dun & Bradstreet, Inc. rating, dated July 3, 1953, which stated Delatorre had an estimated net worth of $16,640 on April 10, 1953. The credit information given by Delatorre to Dun & Bradstreet was apparently false.

■ Actual knowledge of insolvency is not required. It is sufficient that a state of facts has been brought to the creditor's attention concerning the affairs and financial condition of the debtor that would lead a prudent businessman to conclude that the debtor is insolvent. The creditor is charged with the knowledge which a reasonably diligent inquiry would disclose. Canright v. General Finance Corp., D.C.E.D.Ill.1940, 35 F.Supp. 841, 844, affirmed 7 Cir., 1941, 123 F.2d 98; 3 Collier on Bankruptcy (14th Ed., 1941), § 60.53, pp. 989–995; 4–A Remington on Bankruptcy (5th Ed., 1943), § 1709, pp. 224–226.

■ Whether a creditor acted reasonably in making no further inquiries on the basis of facts known to him is a question of fact. "And if the evidence here be not such as to require us to find the trial court's findings clearly erroneous, we must accept that court's conclusions. Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A." Security First Nat. Bank of Los Angeles v. Quittner, 9 Cir., 1949, 176 F.2d 997, 999.

■ In regard to the financial statement issued by Dun & Bradstreet which was apparently based on false information, we quote H. D. Lee Co., Inc., v. Bostian, 8 Cir., 1951, 187 F.2d 942, 944:

"In support of their contention that the trial court erred in finding that the bankrupts were insolvent at the time the payments were made, both defendants rely heavily upon the confidence they placed and insist they were entitled to place in Dun & Bradstreet reports * * *. On oral argument counsel intimated that as the payments were comparatively small * * * one of the principal reasons for these appeals was to obtain an indication from this court as to the reliance which creditors could place in the event of subsequent bankruptcy upon financial reports such as these, made and obtained in the usual course of business. Under the facts and circumstances of these cases, there can be no such authoritative indication. And that is true because, *without minimizing the value of such reports as evidence in bankruptcy proceedings or for other purposes, they must be considered in connection with all of the other evidence bearing upon the question of solvency, knowledge thereof, or reasonable grounds for knowledge thereof. And if in the evidence as a whole there be found reasonable support for the trial court's findings, those findings must stand.*" (Emphasis supplied.)

Substantial evidence supports the findings and the judgment must be and is affirmed.