**Charles SELIGSON, Trustee in Bankruptcy of Ira Haupt & Co., a limited partnership, bankrupt, Appellant,**

v.

**Lester William ROTH, Appellee.**

No. 21929.

United States Court of Appeals
Ninth Circuit.

Oct. 31, 1968.

884

Ernest Utley, of Utley & Houck, Los Angeles, Cal., for appellant.

Charles J. Katz, Los Angeles, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and KILKENNY,* District Judge.

* Hon. John F. Kilkenny, United States District Judge, Portland, Oregon, sitting by designation.

BARNES, Circuit Judge:

Appellant is trustee in bankruptcy for Ira Haupt & Co., a limited partnership, which operated a general brokerage and commission business until forced into bankruptcy in the United States District Court for the Southern District of New York on March 23, 1964. In the Matter of Ira Haupt & Co., a Limited Partnership, Bankrupt, 234 F.Supp. 167 (S.D. N.Y.1964). Immediately before going into bankruptcy, Ira Haupt & Co. (hereinafter "company"), with its main office in New York City, had 16 general partners, 13 limited partners, approximately 700 employees and branches throughout the country. 234 F.Supp. at 168. On November 20, 1963, as a result of financial shortages occasioned by its dealings with Allied Crude Vegetable Oil Refining Co., the company was suspended from further operation by the New York Stock Exchange. Five days later, after a determination that company's capital deficiency was approximately 20 million dollars, company's creditor banks and the Exchange advanced a proposal for the "orderly liquidation" of company, which was accepted. Id. The district court which conducted proceedings on company's involuntary petition for bankruptcy found that, "Haupt was hopelessly insolvent when it was suspended by the Exchange on November 20, 1963 and it has not engaged in the business for which it was organized since that time." Id. at 169.

Appellee, a member of the California bar, became counsel for the Beverly Hills, California, branch of "company" in the spring of 1963. On December 2 of that year, appellee terminated his relationship with company, and at the request of company's local manager, sent his bill in duplicate to company and to a man in New York identified as a "liquidator." On December 11, 1963, appellee sent company's managing partner a time sheet for his work. On December 18, 1963, this officer, who had arranged for appellee to be hired by company, wrote appellee a note stating that his bill had been approved and that his check was being processed. Enclosed with this note was a letter to this official from New York counsel stating that "the amount should be paid to (appellee) by the Liquidator out of so-called 'Haupt Cash'." (R.T. 83.) Appellee received full payment for his services, $7,503.95, on December 23, 1963.

Contending that appellee had knowledge or reasonably should have known of company's insolvency at the time he received his fee, appellant filed a plenary suit in the United States District Court for the Central District of California to recover the payment as a preference made within four months of the filing of the petition in bankruptcy enabling appellant to receive a greater percentage of his debt than some other creditors in the same class.

█ After a separation of the issues, the matter went to trial on the question of appellant's knowledge of the insolvency of company and its general partners as of December 23, 1963, the parties stipulating for purposes of that suit only that company and all its general partners[1] were insolvent on that date.

As its only findings of fact, the district court stated that defendant was without reasonable cause to believe company and all its general partners were insolvent on December 23, 1963, and held, as a resulting conclusion of law, that the $7,503.95 in attorney fees was not a preference that could be avoided by the trustee in bankruptcy.

Our jurisdiction over this appeal is established by 11 U.S.C. § 47.

It is appellant's position that the district court erred both because it refused to find that appellant had reasonable cause to believe that company was insolvent when he accepted his fee and be-

1. It is well established that the assets of the general partners, as well as those of the partnership itself, must be insufficient to meet the partnership's obligations before the partnership can be considered insolvent. 11 U.S.C. § 23. Tom v. Sampsell, 131 F.2d 779, 780 (9th Cir. 1942).

cause it refused to make findings upon the specific facts which it found to be true.

We conclude that appellant's contentions are not well taken; we affirm the trial court's ruling.

■ In order for a payment within four months of the filing of the petition in bankruptcy to be avoided as a preference, the trustee in bankruptcy must demonstrate that when it was accepted, the creditor had "reasonable cause to believe" his debtor was insolvent. 11 U.S.C. § 96(b).

■ Trial court consideration of whether or not a creditor had "reasonable cause" to believe the payor to be insolvent has two parts. The court first examines what the payor knew about the payee's financial position then it applies the law to its conclusions. The first phase of this process is a finding of fact, and, "under General Order 47 this court must accept the finding thereon 'unless clearly erroneous'." Cedar-Comp Materials Co. v. Bumb, 344 F.2d 256, 258–259 (9th Cir. 1956). See Fed.R.Civ.P. 52; Hoppe v. Rittenhouse, 279 F.2d 3, 9 (9th Cir. 1960); Security-First Nat. Bank of Los Angeles v. Quittner, 176 F.2d 997, 999 (9th Cir. 1949). The standard which must be met by an appellant attempting to prove a lower court's finding of fact was "clearly erroneous" is a stringent one; to be convinced, this court must be "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1947).

■ An examination of the record does not leave us with that conclusion. Although appellee was local counsel for company, he did no work touching upon

its financial stability. (R.T. 15–16.) Appellee testified that he had no knowledge of the incident which precipitated company's bankruptcy, the Allied Crude Vegetable Oil Company scandal, (R.T. 21–22, 29, 36), that he never saw a financial statement of the company and that he had no knowledge of the assets of most of company's 16 general partners. (R.T. 36, 37.) Appellee stated that his reaction to company's request that the bill be sent to a liquidator was that company was being liquidated to prove its solvency. (R.T. 40, 41.) A letter from company's managing partner to appellee dated November 20, 1963, was produced. It stated that company was "solvent and is in an excellent financial position." (R.T. 23.) A second letter, dated December 5, 1963, was sent by company's New York counsel to a member of appellee's firm [2] in response to an inquiry on company's legal status made on behalf of another of the firm's clients, City National Bank of Beverly Hills, the bank where company conducted its local banking business. The letter stated, in part, that:

> "The firm of Ira Haupt is in the process of orderly liquidation; it is *not* conducting business as a broker-dealer in the usual sense, but it remains a business entity while it is closing out its affairs. * * *
>
> "We know of no restraining orders or injunctions relating to any of Ira Haupt's offices. * * *
>
> "Haupt is closing out its checking accounts and is shortly writing to the City National Bank of Beverly Hills in that regard. * * *"

After scrutinizing these facts, we cannot say that the district court's resolution of this evidence in appellee's favor was so

---

**2.** Section 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b) makes reference to knowledge of the creditor, "or his agent acting with reference" to the transaction resulting in an allegedly voidable preference, of the debtor's insolvency at the time of the payment. Knowledge of the debtor's insolvency obtained by the creditor's agent is attributed to the creditor regardless of whether or not he actually acquired it. Appellee is thus held to have known of any communication to a member of his firm regarding company's financial position. Mizell v. Phillips, 240 F.2d 738 (5th Cir. 1957). See 4 Remington on Bankruptcy §§ 1711–1711.4 (6th ed. 1957).

incorrect as to be "clearly erroneous," especially since a determination of the credibility of the appellee is so significant to the decision. Fed.R.Civ.P. 52(a).

We also find that the trial court's application of the law to its finding of fact was correct. Appellant contends that the lower court should have employed an alternative proposition, the principle that a creditor is charged with not only that knowledge he has actually acquired but also with all the facts a prudent businessman should have learned through a diligent inquiry If this were done, appellant argues that appellee would be found to have had "reasonable cause to believe." Appellant's statement of the principle is correct. Marks v. Goodyear Rubber Sundries, 238 F.2d 533, 534–535, 62 A.L.R.2d 770 (2d Cir. 1956); H. D. Lee Co. v. Bostian, 187 F.2d 942, 946–947 (8th Cir. 1951); Coder v. McPherson, 152 F. 951, 953 (8th Cir. 1907). We decline to apply it here since we cannot say as a matter of law that a man of "ordinary prudence" with appellee's knowledge would have made further inquiry. While a debtor's assurance of solvency, such as the letter appellee received from the prestigious company officer who had arranged for him to be hired, is not necessarily controlling, Employers Mutual Casualty Co. v. Hinshaw, 309 F.2d 806, 808–809 (8th Cir. 1962), it is sufficient to negate further inquiry when the creditor is without reason to suspect either the integrity, or the accuracy of the information of the informant. Id.

Appellant's second assignment of error is that the trial court made no finding of fact relating to appellee's knowledge of company's insolvency on which to base its conclusion of law that the payment was not an avoidable preference. Appellant contends that the court must do more than announce as a "finding of fact" that appellee had no reason to believe company insolvent; the court must list the reasons which led it to conclude that appellee had no reason to believe. For this proposition, appellant cites In re Hygrade Envelope Corp., 366 F.2d 584 (2d Cir. 1966). We read this case for the more limited proposition that a misstatement of the record by the trier of fact constitutes a clearly erroneous finding of fact. 366 F.2d at 589.

We recognize the function of Rule 52(a) (Fed.R.Civ.P.) in requiring that a court sitting without a jury "find the facts specially" as being "to aid the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court." 2B Barron & Holtzoff, Federal Practice and Procedure § 1121 at 481 (Wright ed. 1961); see 5 Moore, Federal Practice § 52.01(1) at 2653 (1964). While a listing of the reasons prompting its finding would have aided in our evaluation of whether or not the trial court's holding was clearly erroneous, it is not necessary in order for us to understand "the ground or basis of the decision."

In addition, this court has stated that, "the ultimate test as to the adequacy of findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence." Carr v. Yokohama Specie Bank, Ltd., 200 F.2d 251, 255 (9th Cir. 1952). Accord, Zimmerman v. Montour R. R., 296 F.2d 97 (3d Cir. 1961), cert. denied, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed. 2d 793 (1962). The district court's finding of fact is not insufficient by this standard.

In any event, even if the findings were inadequate,

"the failure of the District Court to comply with Rule 52(a) in respect of finding of fact does not demand reversal of the correct judgment of the District Court, if a full understanding of the issues could be reached without the aid of findings, even though such findings would have been helpful." Huard-Steinheiser, Inc. v. Henry, 280 F.2d 79, 84 (6th Cir. 1960).

The issues of this case are not so complex as to preclude our understanding

them, absent specific factual findings of the district court.

The decision of the district court that the payment is not a voidable preference is

Affirmed.